UNITED STATES, Appellee,

v.

**David L. FLEMING, Chief Fire Control Technician (Gun Fire Control) U.S. Navy, Appellant.**

No. 68,218.
CMR No. 89 2896.

U.S. Court of Military Appeals.

Argued June 1, 1993.

Decided Sept. 28, 1993.

For Appellant: *Captain Dwight H. Sullivan*, USMC (argued).

For Appellee: *Lieutenant Commander Lawrence W. Muschamp*, JAGC, USN (argued); *Colonel T.G. Hess*, USMC (on brief); *Captain Hagen W. Frank*, USMC.

*Opinion of the Court*

COX, Judge.

Appellant was tried by general court-martial composed of officer and enlisted members on charges related to his mishandling of classified materials. He pleaded guilty with exceptions and substitutions to violating a lawful general order to safeguard confidential material, being derelict in the performance of duty, and stealing classified military property, in violation of Articles 92 and 121, Uniform Code of Military Justice, 10 USC §§ 892 and 921, respectively. Also, contrary to his pleas, appellant was convicted of one specification each of violating a lawful general order to safeguard classified material, willfully destroying military property, stealing classified military property, soliciting the destruction of classified materials, destroying

classified materials, obstructing justice, and two specifications of violating 18 USC § 793(e) by possessing and retaining classified national defense materials, in violation of Articles 92, 108, 121, and 134, UCMJ, 10 USC §§ 892, 908, 921, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 4 years and 1 month, and reduction to pay grade E–1. The convening authority approved the sentence but suspended confinement in excess of 24 months upon the recommendation of the staff judge advocate. The Court of Military Review set aside the findings of guilty to the two larceny specifications on statute-of-limitations grounds and affirmed the remaining findings; the court affirmed the sentence on reassessment in an unpublished opinion dated May 15, 1992.

Appellant was a member of the periscope photo team aboard the USS LA JOLLA (SSN–701). He took periscope photographs as well as made slides of material to be used in reports. Appellant often worked in his darkroom at home because he had more room and could produce better quality work. He was a "pack rat," and he had numerous slides of a classified nature in boxes in his home. Aboard his ship, he put slides in his shoe locker and pan locker to prevent people from handling them. This type of mismanagement of classified material led to the charges in this case.

When appellant became aware he was under investigation for wrongful possession of classified material, he began searching his apartment to see if he had anything that might fall into that category. He found some slides he was aware he should not have had in his possession and attempted to return them to the ship in a backpack, but the slides were discovered when appellant consented to a search of his backpack. Searches of appellant's apartment and former family residence also revealed a collection of classified material related to appellant's job. The essence of appellant's defense was that he did not know that most of the material at issue was classified.

At trial, the military judge explained to the members that it would be necessary for them to hear information of a classified nature. He instructed them that for material classified secret or below, only parties with the proper security clearances would be allowed to remain in the courtroom; and for top secret evidence, a separate nonpublic courtroom across the street would be used. Security officers would be present in the open hearings to anticipate the necessity of entering a closed session to protect classified information. The attached appendix contains the military judge's instructions regarding the security measures employed at trial.

Appellant raises the following issue before this Court:

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO INSTRUCT THE MEMBERS, AS DICTATED BY *UNITED STATES V. GRUNDEN*, 2 MJ 116 (CMA 1977), THAT SECURITY MEASURES IMPOSED AT APPELLANT'S COURT–MARTIAL COULD NOT JUSTIFY AN INFERENCE OF GUILT.

In *United States v. Grunden*, 2 MJ 116 (CMA 1977), the presentation of classified or security matters to the members was necessary in a court-martial for attempted espionage. Regarding the exclusion of the public from portions of Grunden's court-martial, we stated:

This bifurcated presentation of a given witness' testimony is the most satisfactory resolution of the competing needs for secrecy by the government, and for a public trial by the accused. *It will be incumbent upon the trial judge to sua sponte instruct the court members both as an introductory matter and in greater detail during his final instructions as to the underlying basis for the use of this bifurcated process.* It is imperative that the court members determine whether the documents or information in question are violative of the espionage statute based solely upon the evidence presented. Neither the utilization of a particular document marking, nor the presentation of certain testimony in closed sessions can be, in and of itself,

sufficient to sustain a conviction. *Dubin v. United States*, 363 F.2d 938, 176 Ct.Cl. 702 (1966); *United States v. Drummond*, 354 F.2d 132 (2d Cir.1965).

*Id.* at 123–24 (footnote omitted; emphasis added). A footnote in *Grunden* more specifically explains some of the dangers of bifurcated proceedings:

> It must be apparent that exclusion of the public during a trial may cause some court members to erroneously conclude that as the witness or document needs protection, the testimony must be true, and therefore, the defendant's innocence is to be doubted. Note, *Exclusion of the General Public From A Criminal Trial—Some Problem Areas*, 1966 Wash. U.L.Q. 458. *See* Quick, *A Public Criminal Trial*, 60 Dick.L.Rev. 21, 28 (1955). The fears expressed by the Supreme Court in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), that jurors cannot understand the policy consideration calling for the given exclusion are applicable to this situation. Hence, *cautionary instructions tailored to the facts of the particular case are mandated lest the very purpose behind the procedures discussed be thwarted.*

*Id.* at 124 n.21 (emphasis added).

■ On appeal, appellant argues that he was prejudiced by the judge's failure to instruct properly the members who may have assumed evidence presented in closed hearings was in fact classified or testimony in closed hearings was true. Such inferences assertedly would give that evidence undue weight and consequently prejudice appellant. In particular, he notes that the two specifications of violations of 18 USC § 793(e) require appellant to have had reason to believe the material at issue "could be used to the injury of the United States or to the advantage of any foreign nation." 18 USC § 793(e). The military judge instructed that for a violation of 18 USC § 793(e), the materials must be "related to the national defense." For the documents to be "related to the national defense," they must, first, be potentially damaging to the United States or potentially useful to

an enemy; and, second, be unavailable to the general public. Appellant asserts that, absent proper instructions, members might assume evidence presented in closed hearings is related to the national defense. Appellant additionally contends the failure to instruct could have influenced the members regarding his defense of mistake of fact to two specifications of violating a lawful general order and being derelict in the performance of his duties in violation of Article 92. Appellant claimed he was not aware that some of the materials were classified, and the military judge instructed the members that appellant's ignorance of the classified nature of the documents must be reasonable.

■ Here, appellant is concerned with the possibility members would infer evidence disclosed in closed hearings was classified, that he should have known it was classified, and that the evidence introduced in closed sessions was related to the national defense. *Grunden* was concerned, rather, with his Sixth Amendment right to a public trial, and in *Grunden*, "[t]he sole purpose of this [initial] review [by the judge of the nature of the materials was] to protect an accused's right to a public trial by preventing circumvention of that right by the [military judge's] mere utterance of a conclusion or blanket acceptance of the government's position without a demonstration of a compelling need." 2 MJ at 123, *citing United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). While this Court's focus in *Grunden* was ensuring that appellant's right to a public trial was infringed upon only where necessary for the protection of classified information, we noted that the exclusion of the public should not cause the members to doubt the innocence of the accused. 2 MJ at 124 n.21.

Here, while the judge explained the security measures at appellant's court-martial in detail in his preliminary instruction, he failed to revisit the issue in his final instructions. Under *Grunden*, his failure to give detailed final instructions on the basis

for the bifurcated procedure was error.* However, under the facts and circumstances of this case, the error is not reversible. Art. 59(a), UCMJ, 10 USC § 859(a).

At trial, we note that the military judge instructed the members they must find each element of the offenses beyond a reasonable doubt to find appellant guilty. We also note that all members of this court-martial were required to have security clearances at least as great as any of the materials that might come before them. It would appear that such members would generally be quite comfortable in dealing with classified material. Absent some other indicia, we are not inclined to assume that such members would be so overwhelmed by being exposed to arguably classified material as to lose sight of the very facts the judge charged them with determining.

Moreover, appellant all but conceded that the materials were classified and that their classification was proper. Instead, he contended that he was a collector of nautical memorabilia who kept some items because they were junk, others because he thought he had permission to do so in connection with his photographic duties, some by inadvertence, and still others because he mistakenly believed they were not classified. Accordingly, there is no basis to believe, in the context of the trial of these issues, that appellant was prejudiced by the absence of an instruction that is designed to insure members do not leap to a conclusion that subject documents are classified and are related to national security merely on the basis of trial procedures rather than on the basis of evidence. *United States v. Grunden*, 2 MJ at 124 and n.21.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.

* We need not revisit *United States v. Grunden*, 2 MJ 116 (CMA 1977), and its requirement for a *sua sponte* instruction. Suffice it to say that a military judge has a *sua sponte* duty to insure

## APPENDIX

MJ: I need to give you a little preliminary information. As you can see from looking at the charge sheet, we will be dealing with some classified information at different levels. It will be necessary, from time to time, to deal with a closed court. We also may have to conduct sessions of the trial in another location. Any session at which there will be discussed I believe it is at least SECRET or below, is that correct?

TC: Yes, sir, that's correct.

MJ: Okay, if the level of classification of any of the evidence is SECRET or below, we will close the courtroom and only parties who have the proper classification may be present. We can do that right here. For any information of TOP SECRET SCI, we will return to the spaces across the street, where that information must stay.

You have been advised that you can take notes during the trial, and you can use these notes during deliberations. I have to caution you, however, that if you take notes on classified information, you have created some classified notes. For this reason, what I would propose would be, at the end of each session, that we take your papers and notes and put them into a large envelope, put your name on them, and let the Security Officer take care of them. They will be returned to you at the end of each day.

I would still recommend, however, that you use discretion in taking down classified material. At the end of the trial, those notes could be destroyed, or, if you wish to keep them, you could, but you would have to have them screened by the Security Officer, to make sure that they don't contain any classified information.

One exception to that is, if we are in the spaces across the street, dealing with TOP SECRET SCI, that information cannot leave those spaces. When you take

that an accused receives a fair trial. Members should be instructed any time an unusual trial procedure might suggest the guilt of an accused. *See* 2 MJ at 124 n.21.

notes over there, the notes have to stay over there, so that may affect your desire to take any notes at all. You would have to go back over there to review them, so, with that in mind, now, there may be some times when some classified information is utilized in the courtroom without even closing the court. We try to minimize the amount of time the court is closed, and that would be where documents might be passed around, but not spoken. There would be no spoken classified material—just documents which could be referred to in an unclassified way, marked, handled, read, and, in that case, you would have to be cautious about any questions you might ask, to make sure that you don't ask questions that are classified.

Now, if we are in a closed session, you can properly ask those kinds of questions. In overseeing this, we have behind Lieutenant Commander MacDonald, Lieutenant Tomb and, alternating with her will be Lieutenant Williams. They have been designated as the Court Security Officers. Now, they are responsible for making certain that all classified information is taken care of properly. Now, they will listen to the testimony, and if it appears that classified information is being mentioned in an improper environment, they will indicate that we are getting onto soft ground, in which case we will either close the court or we will put the question over to a later session, when we are in a closed session.

We will try to marshal these things, to be economical in the use of closed sessions, for example, saving several issues, perhaps, for one closed session, and dealing with those coming out if we can, so, any questions on the closed session aspect of it?

(There was no response to this question.)

This is something that is necessary in cases dealing with classified information.

\* \* \*

(The members of the court withdrew from the courtroom ... [after being excused for the day.])

MJ: Okay. There will be a 39(a) session briefly.... Did I misstate anything on Security matters?

LT TOMB: No. Fine.

MJ: Is there anything that you need me to add next time?

LT TOMB: No.

MJ: Did I cover it pretty well? Okay.

Does either side have anything on the record? We are in 39(a) session at the moment, so we can take care of anything you wish.

TC: No, sir, nothing on the record, sir.