UNITED STATES, Appellee,

v.

Kenneth R. WATT, Private First Class,
U.S. Marine Corps, Appellant.

No. 98–0306.
Crim.App. No. 96–1587.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 19, 1998.

Decided April 7, 1999.

Gierke, J., filed opinion concurring in part and in the result.

Sullivan, J., filed dissenting opinion.

CRAWFORD, J., delivered the opinion of the Court, in which COX, C.J., and EFFRON, J., joined. GIERKE, J., filed an opinion concurring in part and in the result. SULLIVAN, J., filed a dissenting opinion.

For Appellant: *Major Stephen Chace,* USMC (argued); *Lieutenant Commander Patricia M. Sulzbach,* JAGC, USN (on brief); *Lieutenant Jeffrey K. Van Nest,* JAGC, USNR.

For Appellee: *Major Troy D. Taylor,* USMC (argued); *Colonel Kevin M. Sandkuhler,* USMC, *Commander D.H. Myers,* JAGC, USN, and *Captain Paul D. Kovac,* USMC (on brief).

Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by members of rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. The convening authority approved the sentence of a dishonorable discharge, 8 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issues:

I. WHETHER APPELLANT WAS DENIED A FAIR TRIAL WHEN THE MILITARY JUDGE ABANDONED HIS ROLE AS AN IMPARTIAL AND NEUTRAL ARBITER AND ASSUMED THE ROLE OF A PARTISAN ADVOCATE FOR THE PROSECUTION BY BADGERING APPELLANT WITH A QUESTION HE KNEW APPELLANT COULD NOT ANSWER.

II. WHETHER APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE BECAUSE THE MILITARY JUDGE RULED THAT HE COULD NOT ANSWER THE JUDGE'S QUESTION ABOUT THE REASONING PROCESS THAT LED HIM TO MAKE SEXUAL ADVANCES ON THE ALLEGED VICTIM.

We also specified the following issue:

WHETHER APPELLANT WAS DENIED THE FUNDAMENTAL RIGHT TO A FAIR TRIAL WHEN THE MILITARY JUDGE RULED A MEMBER'S QUESTION CALLED FOR AN IMPERMISSIBLE RESPONSE FROM APPELLANT, INSTRUCTED APPELLANT TO NOT GIVE THE ANSWER, AND THEN PROCEEDED TO ASK SIMILAR QUESTIONS AND ALLOW TRIAL COUNSEL TO ASK SIMILAR QUESTIONS WHICH CALLED FOR THE ANSWER APPELLANT HAD BEEN INSTRUCTED NOT TO GIVE.

We now reverse for the reasons set forth below.

## FACTS

Lance Corporal Salyer, the ex-girlfriend of appellant's roommate, Lance Corporal Elder, became extremely intoxicated while celebrating her birthday at the Tri–Mod Enlisted Club. She went with Elder back to his room, where the two engaged in sexual intercourse. Afterwards, Elder went back to the club. A few hours later, Elder told appellant that he did not want to spend the night with Salyer but that appellant could. Appellant went back to the room and began petting Salyer.

She became aroused and, according to appellant, moved his hands down to her panties. Eventually, they had sexual intercourse after she removed her panties, during which she grabbed him around the back and made moaning sounds. After appellant had ejaculated, Salyer asked him if he was Elder's roommate. When appellant replied yes, she pushed him off. That is the first thing that she remembers. She then got dressed, left the room, went downstairs, and began to cry. She reported what happened to the military police.

The granted and specified issues are tied directly together and stem from an exchange at an Article 39(a) * session held to rule on the admissibility of appellant's sworn answer to a member's question. Appellant was on the stand as a witness in his own defense. One of the members submitted a set of questions (AE XXIV), and trial counsel called for a 39(a) session on the last one: "At the time prior to intercourse, did you have reason to believe she would have had intercourse with you if she had known who you were?"

After the members were excused, counsel and the military judge discussed the proposed question. The military judge pointed out that the question basically asked for a "yes" or "no" answer, and trial counsel agreed that she had no objection to the form of the question. What trial counsel wanted to know was, if appellant had such a belief, what was the basis for that belief. The military judge put the question as originally asked to appellant, and he answered, "Yes, I do, sir." The judge then asked him what that reason was. Appellant's answer: "Sir, she's known around the barracks as being easy. I mean, I know many people that have only been with her for one night or have only known her for a very, very short time and have been with her sexually."

Trial counsel objected to the question on the basis that sexual reputation is inadmissible under Mil.R.Evid. 401 and 412, Manual for Courts–Martial, United States (1995 ed.).

* Uniform Code of Military Justice, 10 USC § 839(a).

Before the members were called back in, the following exchange occurred between the military judge and appellant:

MJ: PFC, let me caution you now. Nowhere in your response are you going to utter what you believe you have heard her reputation to be around the barracks.

Do we understand that?

WIT: Yes, sir.

MJ: I don't want those words coming off your lips in this courtroom.

Bring the members back in, please.

Once the members returned, the military judge asked appellant the permissible questions from AE XXIV. The military judge then began to address a second member's questions (AE XXV), as follows:

Q[MJ]: Describe in your own words then—addressing [AE] XXV, and those past two questions have been related to this document—describe in your own words why you thought you could take advantage of somebody that you hardly knew and that you knew to be drunk and passed out?

A[WIT]: Sir, at that point in time, I didn't know if she was passed out or not. I made a sexual move towards her to see if there would be any response back towards me as in anything leading to sexual intercourse.

Q: Let me stop you. I understand what you did. My question to you is why? That is, you're telling me that you made a sexual move towards her. You didn't know her; you knew her to be drunk or at least intoxicated or having drunk—having something to drink that evening and had thrown up. You previously testified that although you didn't know with absolute certainty, you believed her at least to be asleep. What was there in your mind that led you to believe you could, to use your words, make a sexual move on her? What was going through your mind at that time that made you believe that it was appropriate to do that? Or can you answer that question?

A: I can't answer that. I can't answer that, sir.

Of course, appellant had an answer, a truthful answer. However, it was not admissible per the judge's ruling at the close of the Article 39(a) session, and the judge had been very firm in telling appellant what he could not say. Yet the judge persisted in asking the very same question which he previously had told appellant he could not answer. Appellant could only respond the way the judge told him to respond during the Article 39(a) session. Then the military judge did it again:

Q: I believe this is the question that you've already said you can't answer, but let me make certain of that. As you sit here, can you describe in your own words what the thoughts were that were going through your mind that prompted you to make this move on her sexually to see what kind of response you would get? Were you attracted to her? Was it just a desire for sex with her? I mean, you tell me, or can you say?

A: Sir, yes, I am attracted to her; but other than that, I can't say.

After these questions by the military judge, trial counsel re-crossed, and then some more questions from members were asked. Appellant was studiously avoiding answering in any way that was close to that about which the judge had admonished him. Finally, trial counsel asked even more questions.

Q: PFC Watt, in answer to one of the member's questions, had you ever gone up and tried to meet her because if you were so attracted to her, you said, no, you're not the type of person that would just go up and try to meet someone; right? That's what you just said?

A: Yes, ma'am.

Q: But you'd go up and just have sex with them?

A: Ma'am, I can't answer that question right now because I was instructed by the judge not to.

Q: PFC Watt, the question's very simple. You wouldn't—you wouldn't go up and say, Hi, my name is PFC Ken Watt. You're not the type of person that would say that?

A. Yes, ma'am.

Q: That's what you just answered, the judge's question?

A: Yes, ma'am.

Q: You're not the type of person who would go up and introduce yourself and say hello when you'd just seen someone else, that you're not that type of person?

A: Yes, ma'am.

Q: And that you're not the type of person—but you are the type of person, you also testified—that would just go up and have sex with someone without introducing yourself. That's what you're saying?

A: Ma'am, I didn't say I'd just go up and have sex with somebody.

\* \* \*

Q: So you are the type of person, based on your testimony, that would have sex with someone that you hadn't met?

A: Yes, ma'am.

Q: But you are too shy to meet them?

A: Ma'am, like I said earlier, I made a sexual motion towards her and she granted it by her actions, ma'am.

Q: PFC Watt, that's not my question. You're too shy to go up and meet her; is that what you're saying?

A: Yes, ma'am.

Q: But you're not too shy to go and have sex with her?

A: No, ma'am.

Q: Even though you hadn't met her?

A: True.

Q: Even though you didn't say hello? Even though you didn't say, "My name is PFC Ken Watt"? Even though you didn't say anything?

A: Correct.

Q: Do you know how ridiculous you sound?

MJ: The members will disregard that last comment. It was inappropriate and should not have been made and you may not consider it for any reason. Captain Ryan [trial counsel], that will not be done again.

Trial defense counsel never objected to the line of questioning by either the military judge or trial counsel. Nor did defense counsel request another Article 39(a) session to address this questioning in light of the previous session.

## DISCUSSION

■ An honest and reasonable mistake of fact as to consent is a defense in rape cases. *United States v. Willis*, 41 MJ 435, 438 (1995); *United States v. True*, 41 MJ 424, 426 (1995); *United States v. Greaves*, 40 MJ 432, 433 (CMA 1994); *United States v. Taylor*, 26 MJ 127, 128 (CMA 1988). In *United States v. Woolheater*, 40 MJ 170, 173 (CMA 1994), the Court held that a defendant has a constitutional right to present exculpatory evidence.

In *Greaves*, the Court held that the defendant's beliefs about the victim's sexual relations, if any, with persons unknown to him, were not relevant to whether the victim was actually consenting with him at that time. 40 MJ at 437–38.

■ At issue in this case is the role of the judge as to this defense. "[A] military judge has a *sua sponte* duty to insure that an accused receives a fair trial." *United States v. Fleming*, 38 MJ 126, 129 n. \* (CMA 1993). In performing this function, the judge should "scrupulously avoid[ ] even the slightest appearance of partiality." *United States v. Shackelford*, 2 MJ 17, 19 (CMA 1976). "Public confidence in the integrity and impartiality of a judge is sustained in large part by the conduct of a judge during the proceeding. . . . In the military, a judge may not abandon his role as an impartial party and assist in the conviction of a specific accused." *United States v. Reynolds*, 24 MJ 261, 264 (CMA 1987). The judge is not a "mere figurehead" or "simply an umpire in a contest between the Government and accused." *United States v. Kimble*, 23 USCMA 251, 253, 49 CMR 384, 386 (1974). The judge, pursuant to RCM 801(c), Manual, *supra*, has authority to "obtain evidence in addition to that presented by the parties." Likewise, Mil.R.Evid. 614(b), Manual, *supra*, permits the judge to question witnesses.

■ These duties require a delicate balance by the military judge. "Because 'jurors

are ever watchful of the words that fall from him,' a military judge must be circumspect in what he says to the parties and in how he examines witnesses." *United States v. Loving*, 41 MJ 213, 253 (1994) (citation omitted), *aff'd on other grounds*, 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36(1996).

■ Here, the military judge compounded the problem created by the questioning, and most likely encouraged the doubts of the members, by instructing them as follows on appellant's answer to trial counsel's question:

> Members of the court, in response to a question from Captain Ryan, the accused indicated that he can't answer that question because I instructed him he could not during an Article 39(a) session in response to a question from me. The accused responded with an answer that was inadmissible as evidence and improper for you to hear, and I instructed him that he would not repeat that in this courtroom. That remains my ruling. You may not consider his answer that he can't answer that question because I told him not to for any reason whatsoever. It remains improper.

Far from rectifying the error, the military judge's actions and this instruction more than likely led the court members into believing that appellant had no basis (as distinguished from an inadmissible reason) for believing that the victim consented. By permitting the question but handcuffing appellant from answering, the military judge enabled the prosecution to argue that appellant was a liar, and that his explanation for believing that the victim consented was "ridiculous." Appellant was forced to sound like he had sex with a sleeping woman and did not know why.

Absent any assistance from the judge or defense counsel, including proper instructions, appellant was in fact left to defend himself without assistance and with no knowledge of the rules of criminal procedure or the rules of evidence.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The findings of guilty and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

GIERKE, Judge (concurring in part and in the result):

I agree with the result and rationale of the majority opinion. However, I decline to join any suggestion that defense counsel was ineffective.

SULLIVAN, Judge (dissenting):

I dissent. It may well have been unfair (and perhaps legal error) for the judge to allow appellant to be put in a position while he was testifying where he could not give full answers to questions that were being asked of him. I note, however, that no legal authority for such error is cited by the majority. In any event, I believe such error, if it did occur, was harmless beyond a reasonable doubt in the circumstances of this case.

Under the controlling law in this case, the prosecution was required to show that appellant had sexual intercourse with the victim without her consent. Even if the prosecution had established that the alleged victim did not consent, appellant might still have defended himself on the basis that he made an honest and reasonable mistake of fact as to the alleged victim's consent. Clearly, evidence of the alleged victim's reputation for engaging in sexual intercourse was not relevant or admissible to show that she consented to appellant on the night in question. *See United States v. Greaves*, 40 MJ 432 (CMA 1994). However, evidence of an accused's knowledge of the alleged victim's sexual reputation *could*, in some circumstances, be a factor which might bear on the honesty of a claim of mistake as to consent in a particular rape case. *See United States v. Willis*, 41 MJ 435, 438 (1995); *United States v. True*, 41 MJ 424, 426 (1995); *United States v. Elvine*, 16 MJ 14, 18 (CMA 1983). Nevertheless, as this Court said in *Elvine*:

> [T]he fact that appellant knew that she had some type of reputation for "coming on" in her unit was not shown to be an important issue in this case.

*Id.*

Here, like in *Elvine*, the fact that appellant knew the sexual reputation of the victim as

"being easy" was not important or "weighty." *See United States v. Scheffer*, 523 U.S. 303, 307, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998). This reputation evidence was not important here, because the victim was sick, asleep, and in such a drunken state that she could not have consented. Moreover, appellant had not even met the victim before he raped her. In these circumstances, undisputed at trial, it would not matter what the sexual reputation of the victim was—such a drunken victim could not give consent anyway since she was passed out and incoherent. *See United States v. Palmer*, 33 MJ 7, 9 (CMA 1991).

It is also undisputed that appellant knew she was in this state, not only by his personal observation of her drunken condition, but because Lance Corporal Elder told him so, and even told appellant not to "mess with her." Therefore, I conclude that the judge properly tried to keep out the evidence of the victim's sexual reputation pursuant to Mil. R.Evid. 412, Manual for Courts–Martial, United States (1995 ed.).

The judge clearly did so in a poor fashion. That may have amounted to error, but as I have said before, if it was error, it was harmless in this case. The jury properly heard all the relevant evidence concerning the alleged victim's condition and appellant's knowledge of it. In my view, it overwhelmingly showed her incapacity and appellant's knowledge of that fact. Appellant's state of mind concerning the victim's consent was simply not material in this context. *See generally United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)(constitutional violation requires showing denial of testimony which would be material and helpful to defense).

No one has the right to rape an unconscious, drunken female. It does not matter what the victim's reputation in this case was, or whether she was a nun or a prostitute, or what appellant believed her reputation was. *See United States v. Palmer, supra.* I would affirm. Art. 59(a), UCMJ, 10 USC § 859(a).