UNITED STATES, Appellant

v

JACK A. BACK, Private First Class, U. S. Army, Appellee

13 USCMA 568, 33 CMR 100

No. 16,322

March 29, 1963

*Captain Otis D. Chapoton* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel James M. McConaughy* and *Lieutenant Colonel Francis M. Cooper.*

*First Lieutenant Richard O. Skoog* argued the cause for Appellee, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod* and *Captain Thomas Stapleton.*

Opinion of the Court

FERGUSON, Judge:

Private First Class Back was tried by a general court-martial convened by the Commanding General, 2d Armored Division, and found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for two years, and reduction to the grade of Private (E-1). The convening authority reduced the period of confinement to one year but otherwise approved the sentence. The board of review reversed and ordered a rehearing because of the failure of the law officer, *sua sponte,* to give an instruction regarding the limited purpose for which certain evidence was admitted. The board's decision has been certified to this Court by The Judge Advocate General, United States Army, upon the following question:

"WAS THE BOARD OF REVIEW CORRECT IN RULING THAT THE LAW OFFICER PREJUDICIALLY ERRED IN NOT GIVING *sua sponte* A LIMITING INSTRUCTION AS TO THE PURPOSE OF THE QUESTIONED TESTIMONY OF THE WITNESS WALLEY?"

At accused's trial, the Government's case offered the testimony of one Walley, a former member of accused's organization. Walley declared that he accompanied accused to the 16th Artillery Motor Pool. While there, accused informed him that he "was fixing to steal something, [and] that I could walk on if I wanted to, so I wouldn't know anything about it." The witness decided to remain and assisted accused in removing a radio and power supply from an Army vehicle. He and accused transported the radio equipment to an artillery range where it was concealed. Accused informed Walley "he wasen't [sic] going to give them [radios] to no one, they were his."

The two then returned to their unit area, and Walley reported the theft to his first sergeant. Criminal investigators were notified, and the radio equipment was, with Walley's aid, subsequently recovered.

Accused was interrogated by military police after proper warning under Uniform Code of Military Justice, Article 31, 10 USC § 831, and orally stated that he had found the items "in the vicinity of the Fort Hood Air Port and Anderson Mountain." He returned them to the motor pool, placed them in a truck, and left them overnight. On the following day, he removed the equipment and took it to the place at which it was found, as "he was affraid [sic] that he would be suspected of stealing the radios due to the fact that he had his finger prints on them."

By cross-examining Walley, defense counsel established that he had informed the accused, "I would keep watch for him." On both direct and cross-examination, Walley declared that he assisted accused because "I wanted to find out if he had any more stuff hidden out." Defense counsel also established that the witness had never seen the accused steal anything other than the radio equipment here involved, nor was he aware of his "own personal knowledge" of any prior thefts by accused.

On redirect examination, trial counsel once more brought out that Walley "wanted to find out where or if he had some other articles hidden out." The following colloquy, over defense objection, was then permitted:

"Q. Why did you think that he may have had other articles hidden out?

"IC: The same objection, mister law officer.

"LO: The same ruling.

"A. Because of what I was warned when I first come into the 14th Artillery, and when the radio came up.

"Q. What were you first warned when you came in?

"A. I was warned of Back taking other articles or believed to be taking other articles.

"Q. That they suspected him of this?

"A. Right.

"Q. Who told you this?

"A. I couldn't exactly tell you who.

"Q. Some other men in the company?

"A. Yes, sir.

"Q. How long had you been in the company when you had been told this?

"A. It was either the first day or the second day, sir. It was soon after I had got there.

"Q. And this reason was the basis for your actions on the 14th, is that correct?

"A. Yes, sir."

The law officer gave no instruction limiting the purpose for which the foregoing might be considered by the court members. It is the lack of such advice which led the board of review to order a rehearing and The Judge Advocate General to certify its decision to us.

We have many times considered the basic question whether a law officer is under the duty, *sua sponte*, to advise the members of a court-martial concerning the limited purpose for which evidence of other, uncharged misconduct of the accused is admitted. In United States v Haimson, 5 USCMA 208, 17 CMR 208, it was declared with respect to this subject, at page 231:

". . . Such an instruction [limiting the effect of evidence of other misconduct] would certainly have been appropriate. But the law officer—we are equally sure—was under no duty *sua sponte* to charge the court regarding this aspect of evidence. The burden of requesting such an instruction rested on defense counsel. Cf. United States v Johnson, 3 USCMA 709, 14 CMR 127; United States v Schumacher, 2 USCMA 134, 7 CMR 10."

The discussion of the principle in United States v Haimson, supra, which is apparently contrary to the board's decision in the instant case, was explained further in United States v Bryant, 12 USCMA 111, 30 CMR 111. Stating in that case that we did not intend "the dictum of *Haimson* . . . to be a definitive statement of the rule of law," the Chief Judge declared for a majority of the Court, at page 115:

"Some cases in the Federal courts indicate that, absent a defense request, it is not prejudicial error to

fail to give an instruction on the limited purpose for which evidence of offenses other than those charged is admitted. See Breese v United States, 203 Fed 824 (CA 4th Cir) (1913). *In our opinion, however, the better rule is that the instruction is a necessary concomitant of such evidence. The Court of Appeals for the Fifth Circuit has pointed out that 'requisite caution' in the use of such evidence includes an instruction on the special purpose for which it is admitted.* Ahrens v United States, 265 F2d 514, 516 (1959); see also Martin v United States, 127 F2d 865 (CA DC Cir) (1942), concurring opinion by Judge Stephens." [Emphasis supplied.]

In United States v Sellers, 12 USCMA 262, 30 CMR 262, a divided Court traveled its several paths concerning the need for such an instruction. The author of this opinion was of the view that it was required under the facts then before us and our decision in United States v Bryant, supra. Judge Latimer, with whom the Chief Judge concurred, bottomed an opposite conclusion not only upon the earlier language in United States v Haimson, supra, but upon his belief that there was, in fact, no showing of uncharged misconduct in the record. United States v Sellers, supra, at page 272.

In United States v Hoy, 12 USCMA 554, 31 CMR 140, the same problem once more came before us. Judge Kilday expressed the view that the rule which we set forth in United States v Bryant, supra, was "not a rule of absolute and undeviating application," and, in light of the peculiar circumstances shown in the *Hoy* record, was of the view that "the law officer was not [there] required, *sua sponte,* to give the limiting instruction." United States v Hoy, supra, at pages 557, 558. Chief Judge Quinn, concurring in the result, adhered to the concept expressed in *Bryant,* supra, but was of the opinion that the law officer's instructions, as a whole, admonished the court concerning the limited purpose for which the evidence of other misconduct was admitted. My dissent set forth my belief that such an instruction was required *sua sponte* and could not fairly be found in the law officer's advice.

Analysis of the cases indicates that when, as in the case presently before us, evidence of other misconduct not charged is received, it is the duty of the law officer, *sua sponte,* to instruct the court members concerning the limited purpose for which it is admitted. United States v Bryant, supra; cf. United States v Hoy, supra. In language of the Chief Judge, the instruction "is a necessary concomitant of such evidence." United States v Bryant, supra, at page 115. Where the law officer fails to give that advice, however, a further inquiry is necessary, and that involves whether its lack prejudiced the accused. United States v Hoy, supra; United States v Sellers, supra. On the one hand, evidence of accused's guilt may be such that the failure to restrict proof of other misconduct may be fairly said to have weighed not at all in connection with the findings and sentence. On the other, the record may present a fair risk that the fact finders accorded weight on the merits to the matter. We cannot lay down any precise measure for answering this subsidiary question, which, of course, depends so much upon the circumstances of the individual case. Undoubtedly, however, it is the focusing of attention upon the erroneous failure to instruct rather than resultant prejudice which has led to seeming difficulty in reconciling the various decisions of this Court on the question. Compare United States v Bryant, supra, with United States v Hoy, and United States v Sellers, both supra.

Turning to the record before us, it is undeniable that the law officer failed in any way to limit the court-martial's consideration of Walley's testimony concerning what he had been told by the accused. The failure so to instruct was clearly erroneous. United States v Bryant, supra. And the prejudicial effect of that nonfeasance is strongly demonstrated by the fact that the evidence involving accused consisted only of Walley's testimony and accused's admission that he had found the property,

returned it to the base, and subsequently hidden it because of fear of an accusation of theft. Certainly, the evidence is not such as to impel a morally certain conviction of accused's guilt in the minds of the fact finders. Nor may it fairly be stated that the unrestricted consideration of the evidence of other misconduct had no effect in their deliberations. Rather, in view of the posture of the record in this case, there is a fair risk that the court may have been led to find accused guilty because of his allegedly larcenous reputation. In short, we believe the able board of review erred not at all when it observed:

> ". . . The posture of the evidence in this case required such detailed instructions since, but for Walley's testimony, there was no case against the accused. We cannot know to what extent the court, uninstructed as it was, considered Walley's statement concerning the appellant's propensity for taking things in determining that the accused had the requisite specific intent to steal. Since the accused in his pretrial statement explained that he was only returning found property, the element of intent was an important issue to be resolved by the court."

The certified question is answered in the affirmative, and the decision of the board of review is affirmed.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

I would answer the certified question in the negative. I agree with the board of review below that "defense counsel opened the door to the unfavorable disclosure." He repeatedly attempted, although unsuccessfully, to get the witness to admit that he stole the radio in anticipation of his separation from the service and later use in his civilian employment. However, I disagree with the conclusion that the accused was prejudiced by the law officer's failure to instruct on the limited purpose for which the evidence was admitted. The excerpts from the record of trial, which are set out below, clearly indicate that the court-martial as well as defense counsel fully understood that the only reason the law officer admitted the evidence was to explain the witness' reason for staying on the scene after the accused told him that he intended to steal the radio. Cf. United States v Bryant, 12 USCMA 111, 113–114, 30 CMR 111; United States v Williams, 13 USCMA 208, 210, 32 CMR 208.

> "Q. [TC] Now, Mister Harris asked you several times why you didn't stop him, or why you didn't report him to the sergeant, you said because you wanted to see if he had other stuff stashed away. The next question, mister law officer, will call for hearsay, but I think it should be admissable [sic]. And now, if you will explain the answer to the question asked by Mr. Harris. Mister Harris asked the court why he felt this way, and I think he should be entitled to explain this to the court.
>
> "IC: I'm going to ask for an out-of-court hearing so the court doesn't hear this, mister law officer, before you rule on it if you choose to let him answer this question, sir.
>
> "LO: Very well. Let's have a short recess so that I may hear this matter out of the presence of the members of the court.
>
> . . . . .
>
> [After the out-of-court hearing, trial counsel resumed the questioning of the witness in open court.]
>
> "Q. [TC] You were asked I believe in cross examination why you didn't report this incident to the two sergeants standing by the gate at the motor pool, or why you didn't tell him that you were going to report him at the time he suggested stealing the radio equipment, could you repeat this answer again to the court as to why you didn't?
>
> "IC: We're going to object to this answer, sir, on the grounds that it's the rankest type of hearsay, sir.
>
> "LO: Objection is overruled, the witness may answer.
>
> "A. Because I wanted to find out where or if he had some other articles hidden out.

"Q. Why did you think that he may have had other articles hidden out?

"IC: The same objection, mister law officer.

"LO: The same ruling.

"A. Because of what I was warned when I first come into the 14th Artillery, and when the radio came up.

"Q. What were you first warned when you came in?

"A. I was warned of Back taking other articles or believed to be taking other articles.

"Q. That they suspected him of this?

"A. Right.

. . . . .

"Q. And this reason was the basis for your actions on the 14th, is that correct?

"A. Yes, sir."