UNITED STATES, Appellee

v

BENNIE E. BELL, Private, U. S. Army, Appellant

19 USCMA 167, 41 CMR 167

No. 22,251

December 24, 1969

*Captain Thomas R. Maher* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Colonel Martin S. Drucker,* and *Lieutenant Colonel Charles W. Schiesser.*

*Captain James L. Rider* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant* and *Major Edwin P. Wasinger.*

## Opinion of the Court

QUINN, Chief Judge:

We granted the accused's petition for review to consider several questions affecting the validity of findings of guilty of, and his sentence for, desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885.

The accused was charged with desertion committed in the Republic of Vietnam in the period from July 23, 1968, to November 2, 1968. At trial, he pleaded guilty to the lesser included offense of unauthorized absence, but the Government elected to proceed with the desertion charge. Over defense objection, trial counsel was allowed to introduce certain evidence on the ground it was relevant to the accused's intent to remain away permanently from his unit. The admission of this evidence is alleged to constitute prejudicial error.

Sergeant First Class Basilio H. Negron, a military policeman, testified that on November 2, 1968, he apprehended the accused and two others in a house in Saigon. The prisoners were taken outside the house and searched. Negron then reentered the house and "pick[ed] up all of the property and all of the evidence" which he put "together in a bunch."[1] One of the articles seized was a wallet containing an armed forces identification card which bore the accused's photograph and the name Daniel L. Rodgers. The wallet was found on a bed. Negron had no "first hand knowledge" of the ownership of the wallet or the card.

At the station house, Negron listed the property seized in the search on an official form. According to his testimony, he filled out the form as a routine "administrative matter," and

[1] No question was raised at trial as to probable cause for the entry, probable cause for the arrest, or the scope of the seizure. See United States v Russell, 15 USCMA 76, 35 CMR 48. In the circumstances of the case, we need not consider these questions.

168

without suspecting the accused of unauthorized absence. To complete the blanks, he asked each of the prisoners "one by one" who owned the wallet. Apparently no one answered. Negron then "pulled the ID card from the wallet," and asked the accused if it was his; the accused acknowledged that it was. In similar fashion, the accused acknowledged ownership of the wallet.

Before Sergeant Negron questioned the prisoners about the seized property, he "advised" them of their rights under Article 31, Uniform Code of Military Justice, 10 USC § 831. However, he admitted he did not properly inform them of the right to counsel. Trial counsel conceded that the preliminary advice was insufficient to satisfy the requirements for "custodial interrogation," as propounded by the Supreme Court of the United States in Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966). See also United States v Tempia, 16 USCMA 629, 37 CMR 249; United States v Burns, 17 USCMA 39, 37 CMR 303. He argued that the accused's acknowledgment of ownership was not made in the course of a "custodial interrogation," but during the "administrative routine of restoring to the rightful owners items of personal property taken at the time of apprehension." Without explanation, the law officer ruled the evidence was admissible.

In United States v Kazmierczak, 16 USCMA 594, 37 CMR 214, we held that an administrative inventory of personal effects for the purpose of safekeeping does not constitute an illegal search. See also United States v Blackburn, 389 F2d 93, 95 (CA 6th Cir) (1968). Recently, in United States v Welch, 19 USCMA 134, 41 CMR 134, we held that police officers may inventory property coming into their custody by lawful means, such as legal search and seizure, without violating the constitutional prohibition against unreasonable search and seizure. Listing the quantity and noting the description of articles obtained by lawful means is, however, a different process from conducting an inquiry to establish the ownership or control of the articles. For example, in United States v Holmes, 6 USCMA 151, 19 CMR 277, we held that military policemen could not, without first informing the accused of his right to remain silent, ask the accused, as part of a lawful search, to identify his articles of clothing from among others in the same room. Here, Negron could not identify the property seized in the search. Obviously, he considered the wallet to be relevant to the offense or offenses for which he had arrested the accused, or he could not have seized it. Equally apparent is the fact that he believed the situation in the station house required him to advise the accused of his constitutional rights because he undertook to inform him of them. See United States v McCauley, 17 USCMA 81, 37 CMR 345. In this situation, Negron's inquiry to establish ownership of the articles seized in the search constituted "custodial interrogation." The acknowledged deficiency in the advice furnished the accused as to his rights made his statements inadmissible in evidence. United States v Tempia, supra.

Appellate Government counsel contend that even if the accused's statements were erroneously admitted into evidence, the error did not harm the accused. See Chapman v California, 386 US 18, 17 L Ed 2d 705, 87 S Ct 824 (1967). The argument has no support in the record. Not only did trial counsel emphasize the importance of the false identification card as evidence tending to establish the accused's intention to remain away permanently, but the law officer instructed the court members that the "evidence of the identification card" could be considered for that purpose. It was, in fact, one of the major items of evidence bearing on the issue.

Turning to the sentence, the accused contends that an entry on the Charge Sheet could be construed by the Court members as indicating he had com-

169

mitted an act of misconduct other than that charged, and the law officer should, therefore, have instructed them to disregard the inference. The entry appears on the first page of the Charge Sheet under the caption, "Data as to Restraint." It is as follows:

| Nature of any Restraint of Accused | Date | Location |
|---|---|---|
| Pretrial Confinement | December 24, 1968 | USARV Installation Stockade RBH |
| Restriction | November 6, 1968 | 25th Supply and Transport Battalion Cantonment area |

At the law officer's direction, trial counsel informed the court members of the "personal data concerning the accused" which appeared on the first page of the Charge Sheet. See Manual for Courts-Martial, United States, 1951, paragraph 75b; Appendix 8a, page 520. The transcript of the record does not show the actual data, but a reporter's note indicates that "trial counsel read page one of the charge sheet to the court." Since there was no objection by defense counsel, we may assume the data read by trial counsel corresponded to the data on the Charge Sheet. See United States v Nichelson, 18 USCMA 69, 39 CMR 69.

Some boards of review have noted that the circumstances as to pretrial restraint may furnish the basis for an inference by the court members that the accused had committed acts of misconduct other than those before the court-martial; as a result, they have held that the court members should be specifically instructed not to draw any adverse inference against the accused from the data as to pretrial restraint. See United States v Millican, CM 418881, October 4, 1968; United States v Mines, CM 420182, July 3, 1969; United States v Gamble, CM 419608, March 25, 1969. Other boards of review have rejected the inference and concluded there was no fair risk of prejudice inherent in the data as to pretrial restraint. United States v Husband, CM 419418, March 27, 1969. More recently, the United States Army Court of Military Review, sitting en banc, considered the issue. United States v Dowdy, CM 420596, October 3, 1969. Several of the judges "assumed" that an inference of other misconduct could be drawn from the data as to restraint; other judges, however, were of the opinion that a change in pretrial restraint did not present a fair risk that the court members would infer the change was the result of misconduct by the accused other than that charged.

As the data regarding pretrial restraint is identified initially with the Charge Sheet, it is reasonable to suppose that, in the first instance, the court members would attribute the restraint to reasons connected with the charges for which the accused is on trial. Certainly, if the information is to the effect that the accused was confined on the day of the commission of the offense charged, it could hardly be argued seriously that the confinement reasonably indicated the accused committed an act of misconduct other than that charged, and it was this act that resulted in his confinement. Similarly, confinement at a later date than that of the offense does not necessarily suggest some other act of misconduct. All that such entry tends to indicate is that the accused's involvement in the offense charged was not discovered until sometime after commission of the offense; when his complicity was discovered, he was confined. Thus, if information as to restraint involves a single entry, the natural inference is that the restraint was imposed for the offenses before the court, not for some other act of misconduct. Is the inference the same when the data discloses a change in

restraint from one of moderate severity to actual confinement?

An increase in the severity of pretrial restraint may be due entirely to reasons associated with the charges. A careful comparison of dates might indicate that the first form of restraint prevailed during an early stage of the prosecution and the more severe restraint was instituted only when the proceedings had matured to the point where it was probable that the accused would be tried on the pending charges. The correspondence in dates would tend strongly to the conclusion that the change in restraint was connected with the charges before the court, not some other act of misconduct. However, the dates of the various stages of the prosecution are not always before the court members. They were not in this case.

When pretrial restraint is increased in severity, the *obvious assumption is* ▊ that something occurred in the interim to justify the greater restriction on personal liberty. Unless the cause is connected directly to the charges before the court, one could reasonably infer that the change was due to some other misconduct by the accused committed in the interim. The inference may be rejected by persons knowledgeable about the reasons and occasions for pretrial confinement, but it impresses us as one that would be credited by persons unskilled in the law. The existing division of judicial opinion on the subject indicates that the risk is not imaginary. Here, it was increased to the point of probability by the law officer's instructions.

The court members were directed to consider all matters in extenuation and mitigation, as well as those in aggravation "introduced before or after findings." They were further advised they could "consider the pretrial restraint," but they received no instruction that pretrial restraint was a matter in mitigation, not aggravation. As a result, a court member could reason that the change in the severity of pretrial restraint was due to later misconduct on the part of the accused and this undisclosed misconduct was a matter in aggravation of the offense. United States v Mines, supra.

A second attack on the adequacy of the sentence instructions deals ▊ with the failure of the law officer to restrict the court members' consideration of the evidence of the accused's possession of the false identification card. The necessity for a cautionary instruction as to evidence of misconduct not charged was considered in United States v Kirby, 16 USCMA 517, 37 CMR 137. Our opinion in that case establishes the merit of this assignment of error.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review. In it discretion, the Court of Military Review may, on the basis of the accused' plea of guilty, approve findings of guilty of unauthorized absence in violation of Article 86, Code, supra. 10 USC § 886, and reassess the sentence in the light of our opinion, or it may direct a rehearing of the charge of desertion and the sentence.

Judges FERGUSON and DARDEN concur.