UNITED STATES, Appellee,

v.

Private (E–2) Jesse JAMES, SSN 389–66–6434, United States Army, Appellant.

CM 435602.

U. S. Army Court of Military Review.

6 July 1977.

Captain Derryl W. Peden, JAGC, argued the cause for the appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, and Captain Ralph E. Sharpe, JAGC.

Captain Robert D. Newberry, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel John T. Sherwood, Jr., JAGC, and Captain Richard A. Kirby, JAGC.

Before JONES, Senior Judge, and FULTON and FELDER, JJ.

## OPINION OF THE COURT

FELDER, Judge:

A general court-martial convicted the appellant of arson in violation of Article 126, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 926. The sentence approved by the convening authority requires this Court to review the case pursuant to Article 66, UCMJ, 10 U.S.C.A. § 866. The appellant asserts that reversal is required because the military judge failed to instruct the court members on evidence of uncharged misconduct.

An understanding of the basis for the conviction is necessary to resolve the issue. The incident occurred at the U. S. Army Hospital in Nuernberg, Germany. According to the government witnesses, the appellant went to his quarters after work and fell asleep in a chair because he was intoxicated. Privates Varnado and Thompson, his roommates, put the appellant to bed. The next morning the appellant claimed that Private Varnado had taken a twenty dollar bill from him the previous night and replaced it with a ten dollar bill. While in the emergency room at about 0630 hours, he

mentioned to Private Ellsworth that Private Varnado would become a casualty there.

Later that evening at about 1830 hours the appellant told Private Everett, another roommate, that he was going to "fix" Private Varnado. The appellant asked Private Everett for some lighter fluid. He indicated that there were ways of dealing with a person who had switched his money, including beating him up or burning him out. The appellant squirted the fluid into Private Varnado's wall locker and set fire to it. Immediately afterwards, he told Private Everett not to tell anyone about the incident. In response to questions asked directly by court members, Private Everett testified that since the event he was afraid of the appellant.[1]

The parties stipulated that property valued at $1,269.78 belonging to Private Varnado and the United States Army were destroyed by the fire. The defense theory at trial was that the appellant was not present at the scene of the crime at the time it occurred (alibi). Additionally, two defense witnesses testified that the appellant is a moral law-abiding citizen. In rebuttal a government witness stated that Private Everett was reluctant to present evidence against the appellant. Two court members elicited through their examination of the witness that Private Everett's reluctance was based upon his concern for his safety and welfare and fear of the appellant's friends.[2]

After both sides rested prior to findings, the judge held a hearing out of the presence of the court members for the purpose of discussing proposed and requested instructions. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 73

---

1. See note 2, infra.

2. No reason was advanced for Private Everett's fear of the appellant and his friends. This evidence was incompetent and irrelevant. Although no objection was interposed, the court members should have been instructed to disregard it. There is a fair risk that the court members inferred from this evidence and the testimony that the appellant told Private Ever-

ett "don't tell anyone", that the appellant attempted to obstruct justice. Contrary to the opinion of Senior Judge Jones, this inference may be drawn by court members even though the total evidence does not cover every element of the offense of obstructing justice. We shall consider this error in our disposition of the case.

*d.* The defense counsel submitted to the judge the following written waiver of instruction:

> "The defense, as part of our trial tactics, waives and gives up our right to an instruction on uncharged misconduct. We do not want the court instructed on the accused's alleged drunkedness on 8 October 1976; on his alleged threat 'I want to fix that . . .' allegedly spoken to Everrett; his alleged supression of evidence statement to Everrett of 'Don't tell anyone'; and his alleged threat allegedly overheard by Ellsworth that 'Varnado would be a casualty in the emergency room', or on any other alleged misconduct."

The trial counsel did not object to the proposed waiver and the judge acceded to the defense counsel's request.

■ Generally, evidence of other offenses is competent to prove the specific crime charged when it tends to establish (1) identity, (2) a common scheme or plan, (3) knowledge or intent, (4) consciousness of guilt, (5) motive, (6) the absence of mistake or accident, or (7) rebuttal of an issue raised by the defense, except good character. *Id.* paragraphs 138*f* and *g.*

■ Three prerequisites must also be satisfied before such evidence qualifies for admission. First, there must be a nexus in time, place and circumstances between the crime charged and the uncharged misconduct sought to be introduced. Second, proof of the other offense must be plain, clear and conclusive. Evidence of a vague and uncertain character regarding the extraneous offense is never admissible. Third, the probative value of the uncharged misconduct must outweigh its potential prejudicial impact. *United States v. Janis,* 1 M.J. 395 (1976); *United States v. Kelley,* 7 U.S.C.M.A. 584, 23 C.M.R. 48 (1957).

Care should be exercised in admitting evidence of independent offenses. Trials might become so involved in collateral matters that the primary issues could be lost. If an accused is shown to have committed other acts of misconduct, court members are likely to convict him regardless of the evidence presented on the charged offense, thus effectually stripping him of the presumption of innocence. *Kraft v. United States,* 238 F.2d 794, 802 (8th Cir. 1956); *State v. Lyle,* 125 S.C. 406, 416, 118 S.E. 803, 807 (1923). Court members might infer from such evidence that an accused has an evil disposition or criminal propensity to commit the offense alleged, and guilt must not be predicated upon bad moral character alone. *See* MCM, 1969 (Rev.), paragraphs 138*f* and *g.*

■ To minimize the danger inherent in the receipt of evidence of uncharged misconduct, the trial judge is required to instruct sua sponte on the specific purpose for which it is admitted. *United States v. Tucker,* 17 U.S.C.M.A. 551, 38 C.M.R. 349 (1968); *United States v. Guzman-Marquez,* 17 U.S.C.M.A. 519, 38 C.M.R. 317 (1968). However, no instruction is required where the extraneous acts occurred immediately prior to, contemporaneous with, or immediately subsequent to the criminal acts charged and were so intermingled with the crime charged as to form inseparable transactions. *United States v. Tobin,* 17 U.S.C.M.A. 625, 38 C.M.R. 423 (1968);[3] *United States v. Daniels,* 37 C.M.R. 878 (A.F.B.R. 1967), *pet. denied,* 17 U.S.C.M.A. 642, 37 C.M.R. 471 (1967); *United States v. Hopkins,* 33 C.M.R. 928 (A.F.B.R.1963), *pet. denied* 14 U.S.C.M.A. 683, 33 C.M.R. 436 (1963). Since the purpose in giving a limiting instruction is to avoid the possibility that court members would convict because the acts of uncharged misconduct show an accused to be of bad character, those uncharged offenses that are directly connect-

---

**3.** In this case an Air Force Captain forced a hotel desk clerk to open a room by threatening him with a pistol and, upon entering the room, he drew the gun on the occupant. The Court held that no limiting instruction was required on the uncharged offense of unlawful entry because it was part and parcel of the charged offenses of communicating a threat to the hotel clerk and assaulting the room occupant. The threat was made to gain entrance into the room and the entrance was gained in connection with the assault.

ed to the charged ones do not have the tendency to create that possibility. *United States v. Sellers*, 12 U.S.C.M.A. 262, 30 C.M.R. 262 (1961) (separate opinion).

■ Accordingly, we shall analyze the purported acts of uncharged misconduct in this case, in light of the rules set forth above, to determine whether limiting instructions should have been given. Turning first to the assertion that the appellant was intoxicated on Friday, 8 October 1976, the night before the incident, that fact is relevant as res gestae in this case. The appellant was a medical assistant assigned to the hospital. He was admitted to the hospital as a patient earlier that day complaining of a knee problem because "you can't put an active duty personnel on quarters over the weekend." He was quartered in the hospital's TDY room with other soldiers. He fell asleep in his room in a chair as the result of being drunk. Being intoxicated in quarters is not punishable under the UCMJ unless committed under service discrediting circumstances. *United States v. Lowe*, 4 U.S.C.M.A. 654, 16 C.M.R. 228 (1954). Certainly there is no evidence of that in this case. Nor is there any indication that either he consumed the intoxicants (alcoholic beverages) on the hospital premise or that he violated any hospital rules. We conclude that the appellant being drunk under the circumstances presented here did not constitute misconduct and no limiting instruction was necessary.[4] Further, it is unlikely that court members would infer from these facts alone that the appellant possessed the characteristics of a criminal.

■ We now consider the appellant's utterances to Private Everett that he was going to "fix" Private Varnado and "don't tell anyone." These remarks were made immediately prior to and after he set fire to the wall locker. The first comment demonstrates the appellant's intention to harm Private Varnado and the second shows his consciousness of guilt and desire to avoid

apprehension. However, those utterances were part of the operative facts and so interrelated to the charged offense that an instruction on uncharged misconduct was not required. *United States v. Tobin, supra; United States v. Daniels, supra; United States v. Hopkins, supra.*

■ Conversely, the statement by the appellant that "Varnado would be a casualty in the emergency room", which was made twelve hours before the incident, is a punishable crime (communication of a threat) separable from the charged offense. That statement, coupled with the government's rebuttal evidence that its principal witness was afraid to testify, very likely gave the court members the impression that the appellant had the criminal propensity to commit the offense of arson. Since the appellant was charged with willfully and maliciously setting the fire, the statement was relevant to establish his intent. Therefore, an instruction limiting the court members' use of the statement was required. *United States v. Kelker*, 50 C.M.R. 410 (A.C.M.R.1975); *United States v. Weindling*, 50 C.M.R. 240 (A.C.M.R.1975); MCM, 1969 (Rev.), paragraph 138g.

We are confronted then with the question of whether an affirmative waiver of the instruction eliminates the judge's responsibility to charge the court. The United States Court of Military Appeals, in *United States v. Graves*, 23 U.S.C.M.A. 434, 437, 50 C.M.R. 393, 396, 1 M.J. 50 (1975), emphasized that irrespective of the desire of counsel, the military judge must bear the primary responsibility for assuring that the court members are properly instructed. Even as in *United States v. Grunden*, 2 M.J. 116 (C.M.A., February 18, 1977), where the defense counsel requested that an uncharged misconduct instruction not be given, that Court decided that nothing short of an instruction would suffice. It reasoned that "No evidence can so fester in the minds of court members as to the guilt or

---

4. We do not imply that the judge would have erred, if out of an abundance of caution, he determined that the appellant's action constituted misconduct and had instructed the court to limit its consideration of that evidence to the circumstances surrounding the establishment of motive.

innocence of the accused as to the crime charged as evidence of uncharged misconduct. Its use must be given the weight of judicial comment, i. e., an instruction as to its limited use." *United States v. Grunden, supra,* 2 M.J. at 119. In *United States v. Bryant,* 3 M.J. 9 (C.M.A.1977), the Court stated, "Court members cannot be expected to correctly perform their function of weighing all the evidence and applying the requisite legal standards to such evidence absent guidance from the trial judge." *Id.* at 10.[5]

■ The erroneous failure of the trial judge to instruct must be tested for its prejudicial effect, if any. *United States v. Back,* 13 U.S.C.M.A. 568, 33 C.M.R. 100 (1963); *See United States v. Bryant, supra; cf. United States v. Gaiter,* 23 U.S.C.M.A. 438, 50 C.M.R. 397, 1 M.J. 54 (1975). In this case the principal witness for the Government was Private Everett, who was present when the appellant committed the offense. His testimony is unrebutted, credible and consistent in material parts. Major Humphries testified that the appellant told her that he was in the TDY room ten minutes before the fire started. Notwithstanding his alibi claim and the testimony presented in support of it, the compelling evidence of guilt precludes any possibility of prejudice as to the findings. *United States v. Kirby,* 16 U.S.C.M.A. 517, 37 C.M.R. 137 (1967); *United States v. Butler,* 39 C.M.R. 563 (A.B.R.1968); *United States v. Horn,* 39 C.M.R. 508 (A.B.R.1968).

The findings of guilty and the sentence are affirmed.

Judge FULTON concurs.

JONES, Senior Judge, concurring:

I agree with Judge Felder except for two minor points which do not affect the result.

First, I do not believe appellant's entreaty to Private Everett to tell no one about the fire, uttered as it was at the time of the incident and to a person who had no duty to report it, amounted to an attempt to obstruct justice. Such a statement would be expected from one who had just committed the offense and would not in my opinion raise a fair risk in the court members' minds as to other misconduct. Additionally, there were no criminal proceedings pending, and no threats, force, bribes, promises or offers used, necessary elements of the offense of obstructing justice. *United States v. Wysong,* 9 U.S.C.M.A. 249, 26 C.M.R. 29 (1958); *United States v. Daminger,* 31 C.M.R. 521 (A.F.B.R.1961).

Second, I do not believe the statement made in the emergency room by appellant that "Varnado would be a casualty in the emergency room" amounted to a threat. I do not find such language under the circumstances to be an avowed present determination of intent to injure. It is too vague and uncertain. *Cf. United States v. Jenkins,* 9 U.S.C.M.A. 381, 26 C.M.R. 161 (1958).

---

5. It is apparent that trial judges have no discretion in determining whether an instruction on uncharged misconduct is given. However, they are expected to exercise their ingenuity and judicial skill in determining when the instruction is given and the emphasis the uncharged misconduct should receive. In our opinion, an important time to charge the court in most cases is immediately after evidence of uncharged misconduct is introduced or as soon thereafter as possible. Recognizing that instructions must provide clear guidance and be tailored to the evidence, the trial judge must decide whether to highlight the uncharged misconduct in general or specific terms. This Court will accord considerable deference to the judge's decisions.