**UNITED STATES, Appellee,**

v.

**Private First Class (E-3) Robert E. INFANTE, SSN 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, United States Army, Appellant.**

**CM 434781.**

U. S. Army Court of Military Review.

29 Aug. 1977.

Colonel Robert B. Clarke, JAGC, Major Benjamin A. Sims, JAGC, and Captain Robert D. Jones, JAGC, were on the pleadings for appellant.

Captain Gary F. Thorne, JAGC, and Captain Denis L. Durkin, JAGC, were on the pleadings for appellee.

Before COOK, DRIBBEN and DeFORD, Appellate Military Judges.

OPINION OF THE COURT

COOK, Senior Judge:

Appellant was tried by a court with members on seven specifications alleging drug related offenses. He pled not guilty, but he was ultimately convicted of the one specification alleging possession of two marijuana plants, a violation of Article 134, Uniform Code of Military Justice (UCMJ) (10 U.S.C. § 934).

## I

■ Because appellant was tried on 20 February 1976, he is not entitled to the sentence relief afforded by the decision in *United States v. Courtney*, 1 M.J. 438 (1976). *United States v. Jackson*, 3 M.J. 101 (C.M.A.1977).

## II

The alleged error bottomed on a "failure" to comply with the provisions of paragraph 4–2a, Army Regulation 635–200, is deemed unmeritorious based on the *ratio decidendi* of *United States v. Sloan*, 23 U.S.C.M.A. 587, 48 C.M.R. 211 (1974) or the holding in *United States v. Torres*, 3 M.J. 659 (A.C. M.R. 1977 en banc).

## III

■ Appellant does allege, however, another fundamental error which we do find meritorious.

Agents of the Criminal Investigation Division (CID) arranged for an informant to make a controlled drug purchase in the appellant's quarters. This was successfully accomplished late at night on 2 December 1975. As soon as the informant exited appellant's apartment with his purchase, the CID investigators entered the premises and conducted a search. During the course of their examination, they discovered the contraband which subsequently became the subject of charges. Appellant was arrested during the course of this raid and taken to the local CID office for interrogation. His pregnant wife and a four-year old child were left behind in the apartment.

During the course of the next several hours appellant was interrogated by the police. Parenthetically, there is no contention that the search was illegal or that the subsequent statement was taken in derogation of the appellant's Article 31/*Tempia* rights.[1] Throughout most of the interview appellant denied any knowledge as to the presence of the narcotics found in his home. Eventually, however, he stated that he was keeping them for a pusher named Pete, a German civilian from Weisbaden, who drove a BMW automobile. At trial, during direct examination by his defense counsel, appellant testified that his statement to the investigators was a complete fabrication and that he had lied to them because he wanted to appear to be cooperating in order to be able to be released to return to his waiting wife. During cross-examination, the trial counsel, attempting to capitalize on the appellant's admission that he had prevaricated to the agents, asked appellant no less than nine questions which elicited confirmation from the appellant that he had in fact lied. This fabrication was also alluded to by counsel in closing argument.

Based upon these facts appellant's counsel contend that the trial judge prejudicially erred when he failed to *sua sponte* instruct the jury on uncharged misconduct. Counsel for the government responds that because appellant's lies were not a chargeable offense under the UCMJ, they do not constitute "uncharged misconduct." While we agree with the government that appellant could not have been held criminally liable in the military system for his mendacity,[2] we do not agree that such is an integral part of the definition of "uncharged misconduct." There is a paucity of military authority on the subject. In one of the few reported cases which allude to the matter, a Navy Board of Review stated that in arriving at its conclusion as to whether or not a limiting instruction was needed it did not consider it determinative that the misconduct was not an offense cognizable under military law. *United States v. Harper*, 39 C.M.R. 860 (N.B.R.1969). Whereas, an Air Force Board of Review, while conceding that there might "be cases wherein the introduction of some form of non-criminal misbehavior on the part of the accused may require limiting . . . instructions, we do not feel, as a general proposition, the

---

1. Article 31, UCMJ; *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

2. *United States v. Geib*, 9 U.S.C.M.A. 392, 26 C.M.R. 172 (1958); *United States v. Washington*, 9 U.S.C.M.A. 131, 25 C.M.R. 393 (1958).

term 'misconduct' should be extended to include more than violations of criminal law." *United States v. Ferre,* 38 C.M.R. 905, 908 (A.F.B.R.1968). We have been unsuccessful in uncovering a published opinion of this Court or a decision from the Court of Military Appeals directly on point.[3] We note, however, that the latter Court did hold in *United States v. Bell,* 19 U.S.C.M.A. 167, 41 C.M.R. 167 (1969) that it was prejudicial error to fail to instruct a court that it was not to consider a change in the type of pretrial restraint (*i. e.,* from restriction to confinement) as evidence of uncharged misconduct. While this latter opinion does not define misconduct, it does indicate that even inferences of misconduct must be instructed upon.

Irrespective of the foregoing, we hold that the admission by the appellant that he lied to the U.S. Army criminal investigators, during the course of their interrogation, about a matter critical to their investigation, was of sufficient seriousness to be labelled "misconduct" for the purposes of this case. The evil that the rule concerning a limiting instruction is designed to guard against is the utilization by the jury of evidence of an act by an accused of uncharged misconduct to conclude that he is disposed to commit criminal acts or is of bad moral character.[4] It would seem logical, therefore, that evidence of any uncharged conduct which, when viewed objectively, could reasonably lead a jury to such an adverse conclusion is deserving of the pejorative "misconduct." It seems to us too much to ask of a jury that it be able to discern between acts which are cognizable by a particular criminal code and those which are merely disreputable. The conduct here in question is particularly illustrative of this dilemma. We would venture to guess, without fear of contradiction, that not one of the jurors in the instant case (nor 90 percent of their contemporaries) knew that it was not a crime under the UCMJ for the appellant to lie to his interrogators. Nor do we think, had they known the true state of the law in this particular, that it would have made one iota of difference in their conclusion concerning the propriety of such conduct by the appellant. In short, we find that the jury in all probability considered the appellant's prevarications to the investigating agents as constituting uncharged misconduct.

As this Court stated in *United States v. Staton,* 48 C.M.R. 250, 252 (A.C.M.R.1974):

"It has been the law for [at least] the past decade that when evidence of misconduct of an accused which is not charged is received in evidence, it is the duty of the military judge, *sua sponte,* to instruct the court members concerning the limited purpose for which it is admitted. *United States v. Baskin,* 17 U.S.C.M.A. 315, 38 C.M.R. 113 (1967); *United States v. Rodriguez,* 17 U.S.C.M.A. 54, 37 C.M.R. 318 (1967); *United States v. Lewis,* 14 U.S.C.M.A. 79, 33 C.M.R. 291 (1963); *United States v. Back,* 13 U.S.C.M.A. 568, 33 C.M.R. 100 (1963); *United States v. Hoy,* 12 U.S.C.M.A. 554, 31 C.M.R. 140 (1961). Our military Supreme Court has consistently held that the military judge's duty is not altered or in any way diminished where part or all of the information on uncharged misconduct was introduced by the defense rather than the prosecution. *United States v. Dixon,* 17 U.S.C.M.A. 423, 38 C.M.R. 221 (1968); *United States v. Baskin, supra; United States v. Averette,* 17 U.S.C.M.A. 319, 38 C.M.R. 117 (1967); *United States v. Rodriguez, supra.*" (Emphasis in original). *Also see United States v. Bryant,* 3 M.J. 9 (C.M.A. 1977); *United States v. Grunden,* 25 U.S.C.M.A. 327, 54 C.M.R. 1053, 2 M.J. 116 (1977).

Having arrived at a determination that the trial judge was obligated under the circumstances of this case to instruct, *sua sponte,* on the appellant's misconduct, we

---

3. *But see* dicta in *United States v. Luzzi,* 18 U.S.C.M.A. 221, 39 C.M.R. 221 (1969) and *United States v. James,* 3 M.J. 851 (A.C.M.R. 1977).

4. Paragraph 138g, Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Hoy,* 12 U.S.C.M.A. 554, 31 C.M.R. 140 (1961).

are still obliged to test his delict for prejudice. *United States v. Bryant, supra; United States v. Gilliam,* 23 U.S.C.M.A. 4, 48 C.M.R. 260 (1974).

While it might appear that because the jury acquitted the appellant of six of the seven charges laid against him, they did not consider his admitted misconduct to his prejudice, such a conclusion is not necessarily warranted. The Government's case on those six specifications was so exceedingly weak that it is highly problematical, had the jury convicted on those specifications, that we would have sustained them on appeal. As to appellant's conviction for possessing two growing marijuana plants, the sole evidence of record was the agent's testimony that they were found in the kitchen of appellant's apartment and the testimony of appellant's wife that the plants were a gift to her from a neighbor housewife who gave them to her on the occasion of her move to a smaller apartment. Based upon this evidence, the judge instructed the jury that in order to find appellant guilty they must find beyond a reasonable doubt that the plants did not belong to Mrs. Infante, and did, in fact, belong to the appellant. Contrary to the implication contained in the dissenting opinion, no instruction concerning constructive possession was ever provided the jury.

The above-stated evidence does not overwhelmingly and indisputably indicate that appellant possessed the plants, to the exclusion of his wife. As the court members were instructed that they could find that either appellant possessed the plants, or his wife did, but not both, we cannot fairly conclude that the court members did not improperly utilize the evidence indicating that appellant was of bad moral character to draw the inference that appellant possessed the plants and to further determine that he had sole and exclusive possession of them. Thus, there is a fair risk that appellant was prejudiced by the absence of an instruction on the uncharged misconduct. *United States v. Bryant, supra; United States v. Gilliam, supra; United States v. Weindling,* 50 C.M.R. 240 (A.C.M.R.1975).

The findings of guilty and the sentence are set aside and a rehearing may be ordered by the same or a different convening authority.

DRIBBEN, Judge, concurring:

I concur with Judge Cook's opinion. In arriving at my conclusion in this case that a limiting instruction was needed, I considered whether accused's misconduct was of such a nature, that while not a violation of the Uniform Code of Military Justice, it was, nevertheless, a violation of a moral code, which can be reasonably attributed to the triers of fact. It is an accepted principle in the armed establishment of the United States that military ideals and practice require an unqualified dedication and willingness to tell the truth. Ascertaining the principles of a moral code reasonably attributable to members of the military should not prove extraordinarily difficult for the trial judge. He is a commissioned officer who has been trained, works, and in many instances, resides within a military community. From this background, I believe the trial judge has developed an understanding of military principles and the rules by which military professionals live. From this understanding, the trial judge should be able to determine whether to instruct *sua sponte* when non-criminal misconduct is placed before the court members.

DeFORD, Judge, dissenting:

I am unable to concur with the majority's disposition of this case.

My disagreement rests upon the majority's premise that the appellant was prejudiced as a consequence of the military judge's failure to give a *sua sponte* limiting instruction to the court concerning the alleged misconduct.

The appellant was charged with seven specifications alleging illegal possession of amphetamines, lysergic acid diethylamide, barbituates, needles and syringes, heroin, marijuana and live marijuana plants.

As noted in the majority opinion, the illegal drugs were found as a consequence

of a controlled purchase by a police informer and the resulting search and seizure.

The appellant occupied the premises in which the drugs were found with his wife and child. He had sublet a portion of the apartment (living room) to another soldier named Clark for his own use and that of his girlfriend. Police investigators had maintained visual surveillance over the premises prior to and during the controlled purchase and had ascertained that a sale of heroin had been made by Clark to their informant. Clark and another person known to be involved in the drug traffic had been observed by the investigators from their surveillance position standing before a window in the living room of the apartment. A short time after the controlled purchase was consummated, the investigators searched the premises and found the illegal substances in several boxes on top of a desk in the living room as well as two live marijuana plants found in the kitchen. The living room of the apartment was that occupied by Clark and his girlfriend although the appellant and his family undoubtedly had some access to the room.

Clark and the appellant were arrested and the appellant was interrogated by the investigators. The thrust of the interrogation concerned the prohibited drugs found in the living room. He initially denied any knowledge of the drugs and drug paraphernalia found in the living room. However, as the interrogation continued, the appellant stated that he held the money received from the drugs and that the drugs and the money belonged to a German national named "Pete."

The appellant was described by the agents as being a "smart guy" and his responses to questions propounded to him were perceived to be sarcastic. The interrogating agents did not believe the appellant's story and attempted to verify it without success. They did not reduce appellant's admissions to a written statement.

At trial, the appellant testified on direct examination that he was concerned about his pregnant wife and that during the interrogation by the investigators, the appellant perceived that the agents did not believe his repeated denials of being involved. He stated that he fabricated the story given to the agents in order to tell them something they wanted to hear. Appellant hoped that the interrogation would be terminated and he could be released and allowed to return to his wife. Upon cross-examination, the trial counsel amplified the fact that the appellant lied to the investigators. The court found the appellant not guilty of the six specifications concerning the drugs, and the needles and syringes found in the living room, but guilty of the possession of live marijuana plants in the kitchen.

As noted, the appellant's testimony on direct examination raised the issue of lying.

The majority concludes that the lack of a limiting instruction coupled with a lack of overwhelming evidence of guilt of the specification of which the appellant was found guilty leads to the possibility that the jury formed the opinion that the appellant was a "bad man" and that there was a fair risk the court was influenced in its single finding of guilty.

The court must have believed the appellant's testimony about lying to the investigators at his interrogation as they acquitted him of six of seven specifications involving the prohibited substance and items found in the living room. If the jury had been influenced by the "bad man theory," logic would dictate that they would have found the appellant guilty of all or at least a portion of those offenses.

The appellant's conviction of the possession of the two live marijuana plants undoubtedly was based on a theory of constructive possession. Constructive possession may be shown by ownership, dominion or control over the premises in which the contraband is found.* I believe that the evidence contained in the record of trial supports the court's finding.

Accordingly, I would affirm the finding of guilty and the sentence.

* *United States v. Salinas-Salinas,* 555 F.2d 470 (5th Cir. 1977).