UNITED STATES, Appellee,

v.

Sergeant First Class (E–7) Harry H. HARRIS, SSN 435–58–9207, United States Army, Appellant.

SPCM 13399.

U. S. Army Court of Military Review.

11 Dec. 1978.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Major D. David Hostler, JAGC, and Captain James J. Parwulski, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Captain Lee D. Schinasi, JAGC, and Captain Stephen D. Smith, JAGC, were on the pleadings for appellee.

Before DE FIORI, CARNE and THORNOCK, Appellate Military Judges.

OPINION OF THE COURT

THORNOCK, Judge:

The appellant, a senior noncommissioned officer, was tried and convicted by a court with members of disobedience of an order of his superior commissioned officer in violation of Article 90, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 890. He was sentenced to a bad-conduct discharge and reduction to the grade of Private (E–1).

On appeal the appellant urges three errors for our consideration: (1) that the military judge erred by failing to instruct *sua sponte* on uncharged misconduct; (2) that the military judge erred in his *sua sponte*

instruction concerning the trial counsel's closing argument; and (3) that the Government failed to demonstrate compliance with Articles 26 and 27, UCMJ, 10 U.S.C. §§ 826, 827, and therefore the court-martial was without jurisdiction. We will discuss the errors in inverse order.

## I

■ Appellant urges that the United States Court of Military Appeals' ruling in *United States v. Newcomb*, 5 M.J. 4 (C.M.A. 1978), requires reversal as there is no affirmative showing in the record that the convening authority personally detailed to the court-martial the military judge, counsel and members. The appellant was tried on 30 January, 1 and 2 February 1978. In *United States v. Mixson*, 5 M.J. 236 (C.M.A. 1978), the United States Court of Military Appeals held that the effective date of application of the rule enunciated in *Newcomb* would be to cases convened after 1 May 1978. Therefore reversal is not required.

■ In his second assignment of error appellant urges that the military judge's instruction concerning the prosecutor's prefinding argument did not cure the error of his remarks and that appellant was prejudiced thereby. We disagree. In his argument on findings the prosecutor's last statement was: "[G]entlemen, in order for you to find this man innocent, you going [sic] to find that Captain [G] and First Sergeant [S] lied under oath." Immediately thereafter the military judge began his instructions. He gave a standard instruction that argument of counsel was not evidence nor law and that the members were to take the law from the judge only. He then, *sua sponte*, added:

In this respect, with regard to the trial counsel's final statement in argument that you must believe that Captain [G] is lying on the stand in order to acquit the accused. Insofar as that statement might place a burden on the defense to prove anything, it is not a correct statement of the law. First, there is not a burden on the defense at all to prove

anything. The accused is presumed to be innocent of the charge and specification to which [sic] he is facing. The burden is on the prosecution to prove beyond a reasonable doubt. [sic] It is therefore, possible with reference to the last statement that you would not affirmatively believe that a witness is lying but that's not really the question.

I will instruct you as to the elements of the offense and you must acquit the accused if you are not convinced of each and every one of those elements beyond a reasonable doubt. The burden is on the prosecution to prove it, not the defense to disprove it.

Trial defense counsel moved for a mistrial and objected that the instruction given was not curative. The motion was denied and the objection overruled. Appellant now argues that in addition to plain error and prejudice from this instruction given, the omission of any reference to First Sergeant [S]'s testimony is also prejudicial. We have carefully reviewed the record of trial, arguments of counsel and the judge's instructions on this matter. We find there is no fair risk of prejudice by the omission and, that taken in context, the military judge's instruction cured any possible error of the trial counsel's remarks.

## II

■ We turn now to the allegations that the military judge failed to instruct *sua sponte* on uncharged misconduct. The essence of the appellant's defense was his personal veracity. The appellant took the stand and under oath averred a position contrary to the Government's position. On cross-examination the prosecutor skillfully elicited that the appellant had a prior court-martial conviction for a similar offense. The military judge gave a proper limiting instruction on how the members could use that evidence. During the Government's case in chief, First Sergeant [S] testified that he had gone to the appellant's Bachelor Enlisted Quarters (BEQ) room at the request of Captain [G] to see why appellant had not complied with the captain's order.

The first sergeant testified in substance that at about 8:00 a. m. he was admitted to the appellant's room by a woman and that appellant was in bed. At a later point in the trial, during cross-examination of the appellant, trial counsel brought out that the appellant was married but that his wife was not with him at Fort Polk or on the day in question. Trial counsel then asked further questions concerning the woman.[1] We find this testimony as evidence of possible misconduct, or at least a violation of a moral code which could be viewed as such by the triers of fact and it was error for the military judge not to at least offer for counsel's consideration a *sua sponte* limiting instruction concerning its use. *United States v. Bryant*, 3 M.J. 9 (C.M.A.1977); *United States v. Grunden*, 2 M.J. 116 (C.M.A.1977); *United States v. Gaiter*, 1 M.J. 54 (C.M.A. 1975); *United States v. Back*, 13 U.S.C.M.A. 568, 33 C.M.R. 100 (1963); *United States v. Infante*, 3 M.J. 1075 (A.C.M.R.1977); and *United States v. Staton*, 48 C.M.R. 250 (A.C. M.R.1974).

The case *sub judice* presents precisely the kind of evil that the rule concerning a limiting instruction is designed to protect against, viz, ". . . the utilization by the jury of evidence of an act by an accused of uncharged misconduct to conclude that he is disposed to commit criminal acts or is of bad moral character. It would seem logical, therefore, that evidence of any uncharged conduct which, when viewed objectively, could reasonably lead a jury to such an adverse conclusion . . ." requires a limiting instruction. *United States v. Infante, supra* at 1077.[2] However, testing for prejudice, we find the evidence of guilt to be so compelling that there was no fair risk that the court's findings were adversely affected by the uninstructed upon evidence of uncharged misconduct. We conclude that the appellant was not prejudiced by this omission.[3] *United States v. Vogel*, 18 U.S.C.M.A. 160, 39 C.M.R. 160 (1969); *United States v. Johnson*, 17 U.S.C.M.A. 479, 38 C.M.R. 277 (1968); *United States v. Kirby*, 16 U.S.C.M.A. 517, 37 C.M.R. 137 (1967).

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CARNE concurs.

DE FIORI, Chief Judge, concurring in the result:

I join in the affirmance of the findings and sentence, but I disagree with the conclusion in Part II of the majority opinion that the military judge's failure to give an uncharged misconduct instruction was error.

I recognize the general rule that evidence of uncharged misconduct requires the trial

---

1. The record colloquy is as follows:

   Q. Was your wife staying with you at that time?
   A. No, sir, my wife was in south Louisiana.
   Q. So, when First Sergeant [S] says he came to your BEQ room and saw a women— woman in your room, then he must have the room confused?
   A. Well, sir, I don't know. However, I'm not being insistent about the whole deal, but I'm not going to say he's lying—
   Q. Why not?
   A. —whatever room he went to because I don't know what room he went to, he said 14, and that is my room. However, I was not there on the 7th.
   We feel that counsel's foray into this area was unnecessary under the circumstances of this case. This is especially so, in view of the clear and compelling evidence of guilt. We urge all counsel and trial judges to be particularly circumspect in the use of misconduct evidence, as those waters are dangerous. An otherwise well tried case often founders on the rocks and shoals of uncharged misconduct.

2. We recognize that the ruling in this case may require trial judges to use greater care in framing uncharged misconduct instructions. In the case *sub judice* a different result might be reached had the trial judge proposed an instruction and the defense objected to it for tactical reasons as suggested by the Chief Judge.

3. Under the facts and circumstances herein, we find that the ". . . uncharged conduct is [not] part of the chain of events that leads to consummation of the crime charged," and further that this evidence could fairly be interpreted by the fact finders as meaning "uncharged crimes rebutting *mistake* or accident, or absence of plan or intent." (emphasis added). *United States v. James*, 5 M.J. 382, 383 (C.M.A. 1978).

judge *sua sponte* to give an instruction limiting its use by the fact finder.[1] I believe, however, that the majority have erred in their definition of the phrase "uncharged misconduct" and in their application of this instructional rule to the facts of this case.

The majority's opinion relies heavily upon *United States v. Infante*, 3 M.J. 1075 (A.C. M.R.1977), a decision which I believe is erroneous. *Infante* held that "uncharged misconduct" need not amount to a violation of the criminal law in order to obligate the trial judge *sua sponte* to give a limiting instruction. The majority apparently recognize that the presence of a woman not the appellant's wife in his BEQ room at 0800 hours on a duty day is not *per se* a criminal act, but they premise their requirement for a *sua sponte* limiting instruction upon a conclusion that these facts constitute "evidence of *possible* misconduct, or at least a violation of a moral code."

*United States v. James*, 5 M.J. 382 (C.M. A.1978), defines uncharged misconduct as "evidence which [gives] rise to *acts sufficient to support independent criminal charges of equal gravity* as those charges for which [an accused is] on trial," and tells us that the instruction is required when there is "[evidence of] uncharged *crimes* rebutting mistake or accident, or absence of plan or intent." (Emphasis supplied, *Id.* at 383). Thus, it is apparent that *United States v. Infante, supra,* is of dubious precedential value. This result is as it should be, for a legal rule which requires trial and appellate judges to sift through "a bramblebush of testimonial controversy"[2] for "inferences of misconduct" or to apply an unspecified or undefined moral code which

may or may not be shared by the members of the court-martial or by reviewing authorities, provides little helpful guidance.

The majority also analyze the facts of this case in terms of the *James* rule. I disagree with their application of this rule because I do not believe that the evidence demonstrates that appellant's conduct rose to the level of an uncharged crime, as required by *James*, nor do I share the majority's belief that the evidence concerning the woman had any tendency to rebut an issue of mistake. Since the defense theory was that the first sergeant and the appellant did not meet and converse in the BEQ room, and appellant's testimony that his wife was not present on post was wholly consistent with that theory, I do not believe that any issue of mistake exists in this record. Paragraph 154a, Manual for Courts-Martial, United States, 1969 (Revised edition).

Finally, I believe that the majority opinion has placed the trial judge in a nearly impossible position. The cases which they cite as authority for their holding all involve factual situations where "plain, clear and conclusive"[3] evidence of uncharged criminal misconduct was before the court. In this case, however, that evidence gave rise, in my opinion, only to a suspicion of misconduct. For the trial judge to have instructed the members how an inference could be drawn,[4] would have been devastating to the defense and might itself have constituted reversible error. *See United States v. Gaiter*, 1 M.J. 54 (C.M.A.1975). I do not believe that *United States v. Grunden*, 2 M.J. 116 (C.M.A.1977), requires an instruction under circumstances such as these.[5]

1. Initially, I note that the trial judge did give an uncharged misconduct instruction in this case. Although the terms of that instruction were focused upon the use to be made by the members of appellant's previous conviction, I believe that it was sufficient to orient the court members to the rule that appellant could not be found guilty merely because his other acts of misconduct gave him the appearance of having a criminal proclivity.

2. *Id.* at 382.

3. *United States v. Janis*, 1 M.J. 395 (C.M.A. 1976).

4. The judge would have had to instruct that the first sergeant's testimony about the presence of a woman (which appellant denied) and appellant's statement about the absence of his wife (which was consistent with that denial) might be combined to give rise to an inference that appellant had committed adultery.

5. *See also United States v. DeFord*, 5 M.J. 104 (C.M.A.1978), where the Court of Military Ap-

peals held that in a case involving charges of possession, transfer and sale of marihuana, the use of a previous conviction for possession of marihuana solely to impeach the accused's credibility as a witness does not require a *sua sponte* instruction.